UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**Shawnta A, on behalf of J.A.,**

                         **Plaintiff,**                       6:20-CV-6500Sr

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                         **Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #14.

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), with the Social Security Administration ("SSA"), on September 29, 2016, alleging disability on behalf of her child, age 7, due to attention deficit hyperactivity disorder ("ADHD"), and asthma. Dkt. #11, pp.54-55.

On September 17, 2018, plaintiff appeared and testified at an administrative hearing before Administrative Law Judge ("ALJ"), Roxanne Fuller. Dkt.

#11, pp.38-52. Plaintiff testified that her son was in the fourth grade and required extra help with reading and math. Dkt. #11, p.43. He is afforded additional time for tests and participates in counseling with a social worker. Dkt. #11, p.44. Although he is below grade level in reading and struggles in math, the child passed all his classes with average grades and was not absent last year. Dkt. #11, pp.46 & 51. She testified that he had a hard time completing his homework last year, but appeared to be doing better so far this year. Dkt. #11, p.46. She testified that her child is very intense and needs time-off to calm down because he gets too hyper. Dkt. #11, pp.43-44. He had a hard time with his classmates - getting into arguments, touching other people and not paying attention to what he was supposed to be focusing on. Dkt. #11, p.47. She testified that the child will daydream or distract himself with odd things, like his shoelaces, when he is supposed to be working. Dkt. #11, p.47. When he becomes frustrated that the work is too hard, he will lay his head down on his desk. Dkt. #11, p.47. He will sometimes complain of a headache when he gets home from school because of all the noise and stuff going on at school. Dkt. #11, pp.45 & 48. He has medication which helps with his headaches and had recently increased his dosage of ADHD medication to account for his growth. Dkt. #11, p.48. He has generally grown out of his asthma, with no more than occasional flare ups. Dkt. #11, p.51. The child lives with his mother, father and eleven year-old sister, with whom he gets along. Dkt. #11, p.49. He will do chores with prompting, such as making his bed, putting his clothes away and taking out the trash. Dkt. #11, p.49.

The ALJ rendered a decision that plaintiff was not disabled on May 13, 2019. Dkt. #11, pp.16-32. The Appeals Council denied review on May 15, 2020. Dkt.

#11, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on July 14, 2020. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). So long as "substantial evidence supports the ALJ's decision, a court will not remand simply because the evidence also supports an alternate conclusion." *Keough o/b/o Jamt v. Comm'r of Soc. Sec'y*, 18-CV-1065, 2020 WL 4504988, at *3 (W.D.N.Y. Aug. 5, 2020), *quoting Cartagena v. Comm'r of Soc. Sec'y*, 18-CV-245, 2019 WL 4750425, at *4 (W.D.N.Y. Sept. 27, 2019).

An individual under the age of 18 will be considered disabled under the Social Security Act ("Act"), if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations and can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner must follow a three-step sequential evaluation to determine whether a

child is disabled within the meaning of the Act. 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaging in substantial gainful activity. 20 C.F.R. § 416.924(a) & (b). If not, the ALJ proceeds to step two and determines whether the child has an impairment or combination of impairments that is severe, *i.e.*, causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). If the ALJ finds a severe impairment or combination of impairments, the ALJ proceeds to step three and examines whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the criteria of a listed impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 416.924(d).

      To evaluate functional equivalence, the ALJ considers how the child functions in the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must cause marked limitations in two domains or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a). A child has a marked limitation when the impairment or combination of impairments interferes seriously with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926(e)(2)(i). A child has an extreme limitation when the impairment or combination of impairments interferes very seriously with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926(e)(3)(i).

In the instant case, the ALJ made the following findings with regard to the three-step sequential evaluation: (1) the child had not engaged in substantial gainful activity since the application date of September 29, 2016; (2) the child's ADHD constitutes a severe impairment; and (3) the child's impairment did not meet or medically or functionally equal any listed impairment, and the child was not, therefore, disabled within the meaning of the SSA. Dkt. #11, pp.19-32. More specifically, the ALJ determined that the child exhibited: (1) less than marked limitation in acquiring and using information; (2) less than marked limitation in attending and completing tasks; (3) less than marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) less than marked limitation in ability to care for himself; and (6) no limitation in health and physical well-being. Dkt. #11, pp. 26-32.

Plaintiff argues that the reports from the child's teachers indicating obvious, serious and very serious limitations support a finding of marked limitation in the domains of acquiring and using information; attending and completing tasks; interacting and relating with others; and caring for yourself. Dkt. #13-1, pp.7-14. Plaintiff also argues that the ALJ failed to develop the record by obtaining an opinion as to plaintiff's functional limitations from the child's primary care physician, Dr. Liano, especially since the ALJ requested the child's medical records from Dr. Liano and the consulting opinion was stale. Dkt. #13-1, pp.15-19.

The Commissioner responds that the ALJ properly considered the teacher evaluations along with educational testing, academic records, medical evidence,

consultative opinion evidence and plaintiff's testimony. Dkt. #15-1, pp.8-17. The Commissioner further argues that the ALJ properly relied upon Dr. Liano's treatment records, which demonstrated that the child's ADHD was well controlled with medication. Dkt. #15-1, pp.18-19. Thus, the Commissioner argues that the ALJ had sufficient evidence to assess the child's functioning. Dkt. #15-1, p.22.

In light of the essentially non-adversarial nature of a social security proceeding, It is well established that an ALJ has an affirmative obligation to develop the administrative record. *See, e.g., Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). This duty is heightened where, as here, a plaintiff properly waives her right to counsel and proceeds *pro se. Id.* at 113. More specifically, an ALJ has a duty to adequately protect a *pro se* plaintiff's rights by ensuring that all of the relevant facts are sufficiently developed and considered. *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990). However, the ALJ is required to seek out additional evidence only where there are obvious gaps in the record. *Eusepi v. Colvin,* 595 Fed. App'x 7, 9 (2d Cir. 2014). The ALJ is not obligated to seek additional medical records where the record evidence is sufficient for the ALJ to make a disability determination. *Johnson v. Comm'r of Soc. Sec'y,* 16-CV-831, 2018 WL 1428251, at *5 (W.D.N.Y. March 22, 2018).

SSA regulations in effect when plaintiff filed her claim provide that the agency "will request a medical source statement," although the lack of a medical source statement will not necessarily render the record incomplete. *Pellam v. Astrue*, 508 Fed. App'x 87, 90 n.2 (2d Cir. 2013), *citing* 20 C.F.R. § 404.1513(b)(6). In *Tankisi v.*

*Commissioner of Social Security*, for example, the Court of Appeals declined to remand where an ALJ failed to request medical source opinions but the extensive medical record contained an assessment of plaintiff's limitations by a treating physician. 521 Fed. App'x 29, 34 (2d Cir. 2013). In *Pellam*, the Court of Appeals determined that the ALJ was not required to obtain a medical source statement from one of plaintiff's treating physicians because the ALJ's assessment of plaintiff's RFC was largely supported by a consultative examiner's report. 508 Fed. App'x at 90. Thus, a determination without treating source opinion evidence will be sufficient when the record is clear and contains some useful assessment of the claimant's limitations from a medical source. *Smith v.Comm'r of Soc. Sec'y*, 337 F. Supp.3d 216, 225-26 (W.D.N.Y. 2018); *Contreras v. Comm'r of Soc.* Sec'y, 13-CV-6474, 2014 WL 5149111, at *14 (S.D.N.Y. Oct. 14, 2014)(while treating source opinion may have been helpful, it was not essential where record contained extensive medical notes regarding ADHD treatment and medication management by treating source).

Although there is no opinion evidence from the child's primary care physician, Dr. Liano, the ALJ obtained and reviewed Dr. Liano's medical records. Dr. Liano's initial assessment of the child, on March 12, 2015, following plaintiff's report that the child was not well adjusted in the classroom, was experiencing conflict with his teacher and displaying impulsive outbursts, noted that the child "understands that he has had impulsive, reactive, negative behaviors at school," and "acknowledges these behaviors were wrong." Dkt. #11, pp.217 & 225. Dr. Liano reported the child, who had been to Unity Pediatrics "numerous times over his childhood," was generally known "to

be a very affectionate, considerate, respectful, mature child, with a sweet disposition" and opined that the child did not meet the clinical criteria for ADHD. Dkt. #11, p.217.

Five months later, Dr. Liano diagnosed the child with ADHD and prescribed medication for that condition. Dkt. #11, pp.233-234. With the exception of a report from the child's mother that the child was falling behind academically and struggling with behavior at school in May of 2016, which prompted Dr. Liano to change the child's prescription medication (Dkt. #11, pp.247-249), and a report from the child's mother in April of 2018 that by early afternoon the child was unable to focus and complete his schoolwork, which prompted Dr. Liano to increase the dosage of the child's prescription medication to correspond with the child's growth (Dkt. #11, pp.286-287), Dr. Liano's medical records consistently indicate that the child was doing well with the prescribed medication and that the child's symptoms were well controlled. Dkt. #11, pp.236-237, 243, 251, 254, 289, 299 & 295.

Dr. Liano's records are consistent with the findings upon examination of Christine Ransom, Ph.D., who performed a consultative examination of the child on December 5, 2016. Dkt. #11, p.261. Plaintiff reported to Dr. Ransom that

> The school indicates that they have seen a significant turnaround. He is now focusing and learning at school and is able to sit still in an appropriate manner. Behavior is very good. [Plaintiff] denied general behavior problems, attention, concentration, and hyperactivity, depression, anxiety and thought disorder while the child is appropriately medicated.

Dkt. #11, p.261. Dr. Ransom indicated that the child

> can dress, bathe and groom himself at age appropriate levels. He gets along well with friends. He enjoys helping

> friends and he enjoys playing with friends at the church group. Adaptive functioning appears to be in the average range.

Dkt. #11, p.263. Dr. Ransom observed that the child's motor behavior was normal and that he showed appropriate attention throughout the exam. Dkt. #11, p.263. Dr. Ransom determined that the child's ADHD was in remission on medication and opined that the child

> will show no evidence of difficulty attending to, following and understanding age appropriate directions, complet[ing] age appropriate tasks, adequately maintain[ing] appropriate social behavior, respond[ing] appropriately to changes in the environment, learn in accordance with cognitive functioning, ask questions and request assistance in an age appropriate manner, be aware of danger but take needed precautions, interact adequately with peers and adults.

Dkt. #11, p.263.

On December 20, 2016, upon review of the child's medical record and Dr. Ransom's consultative examination, state agency medical consultant, Dr. Saeed, and state agency psychiatric consultant, Dr. Prowda, opined that the child would have less than marked limitation in attending to and completing tasks and health and physical well-being and no limitation in acquiring and using information, interacting and relating with others, moving about and manipulating objects and caring for yourself. Dkt. #11, pp.58-59.

Taken together, the Court finds that the medical records from Dr. Liano, combined with the opinion evidence from consultative examiner Dr. Ransom and non-examining State agency medical consultants, Dr. Saeed and Dr. Prowda, provide

sufficient medical source opinion evidence to support the ALJ's determination. *See Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp.3d 376, 387 (W.D.N.Y. 2015) (As qualified experts in the evaluation of medical issues in social security disability claims, the opinions of state agency medical and psychological consultants may constitute substantial evidence and may be relied upon if they are consistent with the record as a whole.).

While plaintiff is correct that the state agency opinions were rendered without the benefit of subsequent teacher evaluations, that does not render the opinions stale. *See Camille v. Colvin*, 652 Fed. App's 25, 28 n.4 (2d Cir. 2016) (there is no rule that a medical opinion is superseded by additional material in the record). In any event, the medical records from Dr. Liano subsequent to the rendering of the consultative opinions continue to document that the child was doing quite well and had made excellent progress in school, with excellent academics and behavior on February 16, 2017; that the child was doing well with the medication regime on August 14, 2017; and that the child would return to his school dose of medication, which plaintiff felt worked well, on September 1, 2017. Dkt. #11, pp.299, 289 & 295. Although plaintiff reported on April 4, 2018, that by early afternoon the child was unable to focus and complete his schoolwork, prompting Dr. Liano to increase the child's dose to accommodate the child's growth and corresponding increase in weight, on August 9, 2018, plaintiff reported that the child was doing well at school and expressed no concern regarding his school performance or behavior with peers. Dkt. #11, p.283 & 286-287. Thus, there is no suggestion in Dr. Liano's treatment records that the child's medical condition

deteriorated subsequent to the state agency opinions. *See Diane B. o.b.o. R.D.B. v. Comm'r of Soc.* Sec'y, 2021 WL 972501, at *4 (W.D.N.Y. Mar. 16, 2021) (medical opinion may be stale if subsequent treatment notes indicate a child's condition has deteriorated.)

The ALJ afforded Dr. Ransom's opinion little weight because additional evidence acquired at the hearing level, including school records, demonstrated "further limitations." Dkt. #11, p.24. Likewise, the ALJ afforded the opinions of Dr. Saeed and Dr. Prowda "some weight," but determined that the overall record supported additional limitations. Dkt. #11, p.24. More specifically, the ALJ recognized educational records and teacher assessments indicating ongoing academic and behavioral difficulties due to ADHD. The ALJ afforded the opinion of the child's second grade teacher some weight, because the record did not indicate that the child was so limited and afforded the opinion of the child's fourth grade teachers partial weight, as they were consistent with the overall record for less than marked limitations in, *inter alia*, acquiring and using information, attending to and completing tasks, interacting and relating with others, and caring for yourself. Dkt. #11, pp.24-26.

The educational records considered by the ALJ include an NICHQ Vanderbilt Assessment Scale an assessment completed by the child's second grade teacher on January 11, 2017, observing that the child very often blurts out answers before questions have been completed; has difficulty waiting in line; interrupts or intrudes on others; loses temper; and is self-conscious or easily embarrassed and often

has difficulty organizing tasks and activities; leaves seat in classroom; runs about or climbs excessively in situations where remaining seated is expected; has difficulty playing or engaging in leisure activities quietly; and is angry or resentful. Dkt. #11, p.272. Dkt. #11, p.272. Cognitive testing conducted by the child's school in June of 2017

> revealed low average ability with consistent abilities across Verbal, Nonverbal Reasoning and Spatial Composites. Academically, [the child's] performance fell within the average range for reading comprehension and word reading; and low average for math problem solving, numerical operations, spelling, and sentence composition. Social emotional levels are of concern, particularly aggression, anger control and emotional self-control; and less so for hyperactivity, conduct problems, learning problems, and bullying.

Dkt. #11, p. 208. It was determined that the child did not fit the criteria of a student with a learning disability, but a behavior support plan and counseling was suggested. Dkt. #11, pp.208-209.

At a special education meeting the following year, on May 23, 2018, it was noted that the child was meeting standards in English Language and was far below standards in math. Dkt. #11, p.208. The committee recognized that the child

> has had some academic gains, but his behavior continues to decline. He is often using inappropriate language and/or interactions towards peers and struggles with self-control when he is frustrated or upset.

Dkt. #11, p.208. A Section 504 Plan was put in place for the 2018-2019 school year. The child was to receive psychological counseling services, preferential seating, positive reinforcement, minimized distractions and frequent comprehension checks. Dkt. #11, p.209.

On October 16, 2018, the child's teacher, Kevin Haak, completed a questionnaire indicating that the child was below grade level for reading, math and written language. Dkt. #11, p.178. From a list of 10 skills relating to the child's ability to acquire and use information, Mr. Haak observed a serious problem with the child's ability to comprehend and do math problems and express ideas in written form. Dkt. #11, p.179. Mr. Haak noted that the child wants to work independently, but has limited success. Dkt. #11, p.179. From a list of 13 skills relating to the child's ability to attend and complete tasks, Mr. Haak observed, on a weekly basis, a serious problem with the child's ability to complete class/homework assignments and, on a daily basis, a serious problem with the child's ability to complete work accurately without careless mistakes. Dkt. #11, p.180. From a list of 13 skills relating to the child's ability to interact and relate with others, Mr. Haak observed, on a daily basis, a very serious problem with the child's ability to express anger appropriately, noting that the child gets upset with peers easily and is aggressive. Dkt. #11, p.181. From a list of 10 skills relating to the child's ability to care for himself, Mr. Haak observed a very serious problem in the child's ability to handle frustration appropriately; respond appropriately to changes in his mood; and use appropriate coping skills to meet the daily demands of the school environment, as well as a serious problem using good judgment regarding personal safety and dangerous circumstances. Dkt. #11, p.183. Mr. Haak noted that the child was taking medication for ADHD, but that the medication sometimes wasn't given to the child and that the child has a hard time when he is not on his medication. Dkt. #11, pp.l183-184.

On November 29, 2018, the child's teacher, Melanie Knapp, completed a questionnaire indicating that the child was struggling with math computation and fluency

and was below grade level in reading and writing. Dkt. #11, p.200. From a list of 10 skills relating to the child's ability to acquire and use information, Ms. Knapp observed a serious problem with the child's ability to read and comprehend written material; comprehend and do math problems; provide organized oral explanations and adequate descriptions; express ideas in written form; recall and apply previously learned material; and apply problem solving skills in class discussions. Dkt. #11, p.200. From a list of 13 skills relating to the child's ability to attend and complete tasks, Ms. Knapp observed, on an hourly basis, a serious problem with the child's ability to complete work accurately without careless mistakes. Dkt. #11, p.201. She noted that the child is able to focus, but often shuts down before completing tasks. Dkt. #11, p.201. From a list of 13 skills relating to the child's ability to interact and relate with others, Ms. Knapp observed, on an hourly basis, that the child had a very serious problem seeking attention appropriately; following rules; and respecting adults in authority, a very serious problem expressing anger appropriately, and, on an hourly basis, a serious problem playing cooperatively with other children and making and keeping friends. Dkt. #11, p.202. She explained that the child gets very upset suddenly and walks out of class; does not respect directions or rules and is often aggressive with peers. Dkt. #11, p.202. She noted that the child receives preferential seating away from his peers and is subject to a behavior management system. Dkt. #11, p.202. From a list of 10 skills relating to the child's ability to care for himself, Ms. Knapp observed, on an hourly basis, that the child had a very serious problem handling frustration appropriately; identifying and appropriately asserting emotional needs; responding appropriately to changes in his mood; and using appropriate coping skills to meet daily demands of school

environment, and, on a daily basis, a serious problem using good judgment regarding personal safety and dangerous circumstances. Dkt. #11, p.204. She observed him to be aggressive physically with his peers and explained that the child's anger escalates quickly and he is hard to calm down. Dkt. #11, p.204. She opined that he had no independent coping skills. Dkt. #11, p.204.

The report card for the 2018-2019 school year indicates that the child was beginning to meet standards in English Language and Math in November of 2018 and was partially meeting standards in English Language and beginning to meet standards in Math in January of 2019. Dkt. #11, p.207. Comments from Ms. Knapp in January of 2019 indicate that the child

> is a caring individual. He is always willing to help in the classroom. We continue to work with [the child] on his low self-confidence, this greatly affects his ability to grow as a learner. [The child] continues to shut down when he does not understand the concept that he is working on. We try to support him when he needs it, but frequently he will not accept the help. When [the child] is focused, he is able to effectively engage in class discussions. [The child] needs to continue to work on strategies to help him when he gets frustrated. He will not use resources that are in the classroom to help block out some of the distractions. [The child] will use the strategy of taking a break to regain his thoughts, but he is just walking out of the room, slamming the door behind him; whereas before he was asking permission to leave. We will continue to work on strategies to support [the child], be he needs to take advantage of the support that we are trying to give him in order for him to grow as a learner. Overall [the child] is a pleasure to have in class. Please continue to support [the child] on his reading, writing and math facts (addition and multiplication facts) at home.

Dkt. #11, p.207.

Although teachers are not medical sources, given their close interaction with students on a regular basis, teachers are considered valuable sources of evidence for assessing the severity of a child's impairment and it's effect on the child's ability to function. SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006). However, a teacher's assessment of a serious or very serious problem in a particular skill area in a domain of functioning does not necessarily equate with a marked limitation. *Christina B. v. Comm'r of Soc. Sec'y,* 5:19-CV-1192, 2020 WL 5848732, at *8 (N.D.N.Y. Oct. 1, 2020); *White o/b/o T.R.W. v. Berryhill*, 17-CV-6367, 2019 WL 1367382, at *5 (W.D.N.Y. March 26, 2019); S*pruill v. Astrue*, 6:12-CV-6060, 2013 WL 885739, at * 8 (W.D.N.Y. March 8, 2013).

In the realm of acquiring and using information, the ALJ appropriately relied upon the fact that the child remained in regular education classes, demonstrated low average to average cognitive ability, did not meet the criteria for a learning disability and demonstrated academic gains to determine that the child had a less than marked limitation in acquiring and using information. *See Contreras*, 2014 WL 514911, at *15 (substantial evidence supported less than marked limitation where child was in general education classes with supportive services performing in the low-average range).

In the realm of attending and completing tasks, the ALJ acknowledged teacher observations of weekly serious problems completing assignments and hourly/daily serious problems completing work accurately without careless mistakes, but appropriately relied upon plaintiff's reports to Dr. Liano that the child was doing well with

the prescribed medication and the child's symptoms were well controlled, plaintiff's report to the consultative examiner denying difficulty with concentration, attention or hyperactivity while the child is medicated, the consulting examiner's observation that the child showed appropriate attention throughout the exam; the minimal accommodations afforded the child in his 504 Accommodation Plan; and the teachers' reports of no problems and slight problems in the majority of activities listed in this domain to determine that the child's limitation in this domain was less than marked. *See Leon o.b.o. J.E.V. v. Comm'r of Soc.* Sec'y, 2020 WL 6699521, at *5 (W.D.N.Y. Nov. 13, 2020) (finding substantial evidence to support ALJ's finding of less than marked limitation despite observation of serious problems completing homework and very serious problems completing work accurately).

In the realm of interacting and relating with others, the ALJ acknowledged teacher observations that the child was aggressive with his peers, did not respect teacher directions and became upset suddenly, but appropriately relied upon plaintiff's reports that the child got along with his sister, had friends, enjoyed playing with friends from church and played team sports, as well as the teacher's report that the child had average relationships with his peers, is a caring individual and overall was a pleasure to have in class to determine that the child's limitation in this domain was less than marked. *See Patrick B. o.b.o. D.B. v. Saul*, 2020 WL 6287482, at *7 (ALJ properly weighed ability to maintain friendships and communicate within the classroom against inappropriate behavior and serious problems following rules).

Although the most severe problems identified by the child's teachers arguably revolved around his ability to regulate his emotions, the ALJ acknowledged these concerns and properly balanced them against the plaintiff's reports regarding the child's ability to interact with others, perform chores and care for his physical needs, as well as observations from the consultative examiner, to determine that the child's limitation in this domain was less than marked. *See Soto o.b.o Comm'r of Soc.* Sec'y, 18-CV-8433, 2020 WL 550289, at *21 (S.D.N.Y. Feb. 4, 2020) (substantial evidence supported finding of less than marked limitation despite concerns about child's ability to regulate his own behavior where child was able to feed, bathe and dress himself, perform basic chores and reflect on his own behavior).

In as much as the decision demonstrates that the ALJ fairly considered the evidence in the record, including the child's medical and educational record, and appropriately weighed the opinion evidence, including that of the child's teachers and state agency consultants, in reaching her determination as to the child's functional capacity, the Court concludes that the ALJ's determination that the child does not functionally equal the Listings is based upon substantial evidence.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #13), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #15), is granted.

The Clerk of the Court is directed to close this case.


**SO ORDERED.**


**DATED:** **Buffalo, New York**
**September 16, 2021**


          <u>s/ H. Kenneth Schroeder, Jr.</u>
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**